## Commonwealth v. Allen

C.P. of Warren County, no. 11 of 1995.

*Joseph A. Massa Jr.,* for Commonwealth.
*Ross McKeirnan,* for defendant.

MILLIN, *P.J.,* February 16, 1995—This matter comes before the court initially on the petition by the Commonwealth for a nolle prosequi; thereafter, the defendant filed a petition to dismiss with prejudice and for expungement of the arrest record. The Commonwealth at the time of argument acquiesced in the petition to dismiss with prejudice but opposed the expungement of the arrest record. Normally the court would grant as a matter of course the request of the defendant which is joined in by the Commonwealth; however, because of the seriousness of the charges and because the Commonwealth requested an independent review of the evidence,[1] the court has reviewed the applicable law as well as the factual evidence available which the Commonwealth has presented to the court prior to entering this opinion and order.

---

1. The Commonwealth's petition for nolle prosequi does not specifically request an independent review of the facts; however, at the time of presentation of the petition in open court, the district attorney presented to the court the entire Commonwealth file and stated to the court that the preliminary hearing transcript had been requested. The preliminary hearing transcript has now been presented and reviewed by the court.

## THE FACTS

A review of the evidence reveals that the defendant, in his final statement to the Pennsylvania State Police, stated that he and his mother and father were at his father's residence in Cherry Grove Township, Warren County, on July 7, 1994. His mother and father had both been drinking and were arguing loudly. The defendant stated that he went into the cottage to get away from the arguing and turned up the music. While he was in the cottage his father came in, and as he walked past the defendant mumbled to himself, "Your mother doesn't think I'll do it." The deceased then returned to the room and walked back outside with his .357 service revolver. (The deceased was a retired state police officer. ) The defendant followed him outside, not knowing whether his father intended to shoot himself or his mother. He said that his father cocked the gun and put it under his chin. The defendant grabbed at it, trying to pull it away as the gun went off, shooting away a portion of his father's face. They both then fell to the ground. The defendant received a bad powder burn where he was hanging on to the gun as it fired. The defendant's father then rose to his knees, placed the gun under his chin and fired again. The defendant then states that, believing his father to be dead, he went inside, obtained a blanket and brought it out to cover his father. As he did, he felt some movement of his father's stomach, thought he noticed breathing; and because he did not want his father to suffer further, pointed the gun at his father's head and "it went off."

All of the circumstantial and scientific evidence which the Commonwealth possesses substantiates the defendant's statement. The neighbors, Leonard and Barbara

Toy, state that they heard the loud argument, heard two shots in fairly rapid succession, and then a delay and a third shot. The defendant's mother substantiates this statement. The atomic absorption spectroscopy analysis of both the defendant and his father verifies that the father had fired the weapon, that the defendant had also fired the weapon but had also been in close proximity to the weapon when it was fired. This fact was also verified by the burn which the defendant received to his hand.

The pathologist, Dr. Eric Vey, testified at the preliminary hearing that there was no question in his mind that the second shot by the victim himself was fatal. The victim could not have survived the second shot for more than a period of 10 to 20 minutes.

## THE LAW

A nolle prosequi is the voluntary withdrawal by the district attorney of further proceedings against a defendant. *Commonwealth v. Shields,* 89 Pa. Super. 266 (1926). The Pennsylvania Judicial Code provides:

"After the commencement of a criminal matter by the filing of an information or otherwise, the district attorney shall not enter a nolle prosequi or dispose of the matter or discharge a prisoner from custody by means of a proceeding in lieu of a plea or trial without having obtained the approval of the court." 42 Pa.C.S. §8932.

Therefore, in Pennsylvania a nolle prosequi is the voluntary withdrawal by the district attorney of a criminal proceeding which requires the assent or concurrence of the court. Here, the defendant opposes the entry of a nolle prosequi for the reason that a nolle prosequi leaves the criminal action in limbo, and it could be resurrected

and reactivated at a later time by this or another district attorney since the charge of criminal homicide has no statute of limitations.

"Prosecution for the following offenses may be commenced at any time: (1) murder, (2) voluntary manslaughter. . . ." 42 Pa.C.S. §5551.

The defendant points out that to allow the prosecution to withdraw the charges at this time, leaving them open to be refiled at a later time, violates the defendant's right to a speedy trial under both the federal and state constitutions. The defendant cites for the court's consideration *Klopfer v. State of North Carolina*, 386 U.S. 213, 87 S.Ct. 988 (1967). In that case the defendant was indicted and tried on a charge of criminal trespass, but a mistrial occurred when the jury failed to return a verdict. The defendant later moved for a definite indication as to when he would be retried. In response the prosecutor requested and was granted a nolle prosequi which permitted the defendant complete freedom but which also maintained in the prosecutor the power to relist the case for trial at any time. The U.S. Supreme Court held that the procedure was constitutionally defective. In doing so the court stated:

"The consequence of this extraordinary criminal procedure is made apparent by the case before the court. A defendant indicted for a misdemeanor may be denied an opportunity to exonerate himself in the discretion of the solicitor (prosecutor) and held subject to trial, over his objection, throughout the unlimited period in which the solicitor (prosecutor) may restore the case to the calendar. During that period, there is no means by which he can obtain a dismissal or have the case restored to the calendar for trial . . . ." *Klopfer, supra* at 990.

The court went on to state that the North Carolina court had held that the defendant's right to a speedy trial did not afford affirmative protection against an unjustified postponement of trial. The Supreme Court stated that that proposition had been rejected by every other state court which had considered the question. The Supreme Court pointed out that the defendant is not relieved of limitations placed upon his liberty by the prosecution merely because the suspension of prosecution permits him to go wherever he wants to. The pendency of the prosecution, the court stated: "may subject him to public scorn and deprive him of employment, and almost certainly will force curtailment of his speech, associations and participation in unpopular causes. By indefinitely prolonging this oppression, as well as the anxiety and concern accompanying public accusation, the criminal procedure condoned in this case by the Supreme Court of North Carolina clearly denies the petitioner the right to a speedy trial which we hold is guaranteed to him by the Sixth Amendment of the Constitution of the United States." *Klopfer, supra* at 993.

In the Pennsylvania Supreme Court case of *Commonwealth v. Leaming,* 442 Pa. 223, 275 A.2d 43 (1971), the Pennsylvania Supreme Court stated: "the speedy trial guarantee is also much concerned with limiting the period of 'anxiety and concern accompanying public accusation.' . . . and, in this regard, quashing the instant appeal makes little sense. The logic of the Commonwealth's position allows for the possibility that appellant will be forced to live under the shadow of a pending indictment for years, and appellate review after trial at the expiration of such a potentially long period can provide no effective remedy for the intervening anxiety and concern." *Id.* at 225-26, 275 A.2d at 44.

The court went on to consider the question of the seriousness of the charge of murder and the absence of the statute of limitations. In the *Leaming* case, the defendant's conviction on a first-degree murder charge had been overturned by the Supreme Court on the basis that a confession was unconstitutionally obtained. At the nolle prosequi hearing it was found that the appellant's alleged accomplice had been committed to Fairview State Hospital, and it was the opinion of the Commonwealth's attorney that he would "remain there for the rest of his life." No other potential evidence against the appellant was discussed at the hearing, and the Commonwealth's only stated basis for seeking a nolle prosequi was the possibility that the law might change in connection with the admissibility of the excluded confession. The court stated:

"The Commonwealth's contention that the law might some day change is no more than a vague and unsubstantiated hope that we will overrule our decision in appellant's prior appeal. In these circumstances, appellant is entitled to demand that the Commonwealth either proceed to trial or be barred from further prosecution." *Id.* at 228-29, 275 A.2d at 46.

Here, the Commonwealth admits the correctness of the position of the defendant that the charges should be dismissed with prejudice for the Commonwealth's investigation of the crime has been complete for many months, and it is the Commonwealth's position that the evidence available to it will not prove the charges against the defendant beyond a reasonable doubt. The court's review of the evidence leads to the inescapable conclusion that the Commonwealth's position is correct. The uncontradicted testimony of Dr. Eric Vey was that the self-inflicted second gunshot wound was fatal.

"A. If gunshot three to the right temple had not been inflicted, gunshot two certainly would have eventually resulted in death, probably within 10 to 20 minutes as a result of hemorrhage and associated shock from the multiple fractures which were incurred as a result of gunshot wound number two.

"Q. Is it fair to say in layman's terms that both two and three were fatal?

"A. Right." (Preliminary hearing transcript, page 89.)

In further describing the second self-inflicted gunshot wound, Dr. Vey stated:

"Q. You found no exit wound associated with that particular shot?

"A. Right.

"Q. You can't make any definitive answer to a degree of medical certainty what happened after that except to say it must have gone straight through the jelly substance?

"A. Right. In fact, it would be more correct to state that with respect to the passage of the bullet through the frontal lobe, rather, it would be more correct to state that it enters the frontal lobe, period.

"Q. So when you say through the frontal lobe, now you're backtracking from that?

"A. Yes. You have raised a perfectly valid point, and I overlooked that, yes. I can't say with a reasonable degree of medical certainty that that bullet completely traversed the frontal lobe." (Preliminary hearing transcript, page 101.)

On further cross-examination, the doctor stated:

"Q. I get the impression that you can't say for certain the path that this bullet took after it leaves the bony structure?

"A. That's correct.

"Q. Is it possible that this bullet rattled around inside his head as it glanced off the bones?

"A. It's possible. Certainly.

"Q. Do you have any opinion as to the velocity the bullet would have had at the point it reached the brain?

"A. No, I do not.

"Q. And you really can't state with any exact degree of medical certainty all of the trauma that that shot caused, right?

"A. Right." (Preliminary hearing transcript, page 102.)

Given the inability of Dr. Vey to determine the exact damage done by the second self-inflicted shot and his pronouncement that he is certain that the second self-inflicted shot inflicted a mortal wound, the court must conclude that it would be an exercise in speculation for a jury to attempt to determine that the defendant caused the death of his father. Causation is an essential element of the offense of murder which the Commonwealth must prove beyond a reasonable doubt.

"The Commonwealth must prove a *direct* causal relationship between the defendant's acts and the victim's death." *Commonwealth v. Barnhart,* 345 Pa. Super. 10, 28, 497 A.2d 616, 626 (1985). (emphasis in original)

Section 303 of the Pennsylvania Crimes Code states that conduct "is a cause of a result when it is an antecedent but for which the result in question would not have occurred." 18 Pa.C.S. §303. In *Commonwealth v. Rementer,*

410 Pa. Super. 9, 598 A.2d 1300 (1991), the Pennsylvania Superior Court stated:

"Therefore, criminal causation has come to involve a case-by-case social determination; *i.e.,* is it just or fair under the facts of the case to expose the defendant to criminal sanctions. In other words, was the defendant's conduct so directly and substantially linked to the actual result as to give rise to the imposition of criminal liability . . . ." *Id.* at 19, 598 A.2d at 1304.

For the foregoing reasons the court agrees with the defendant and the Commonwealth that the criminal charges should be dismissed with prejudice.

The only factor remaining to be considered by the court is the requested expungement of defendant's criminal record. The court believes that the case of *Rambo v. Commissioner of Police,* 301 Pa. Super. 135, 447 A.2d 279 (1982), is determinative of that issue. In the *Rambo* case the appellant was arrested and tried for possession with intent to deliver a controlled substance. The trial was before a jury, and the defendant was found guilty of possession with intent to deliver hashish and was sentenced to three years imprisonment. He appealed, arguing that the evidence was insufficient. Eventually the Supreme Court of Pennsylvania reversed his convictions, stating that the evidence fell far short of establishing appellant's guilt beyond a reasonable doubt and that "the conviction here is based only upon conjecture." *Id.* at 137, 447 A.2d at 280. His conviction having been overturned, appellant petitioned the lower court to have his arrest record expunged. The Superior Court explained that "[i]n an expunction case in which the prosecution was terminated for reasons related to the innocence of the accused, the

Commonwealth has the burden of showing a compelling reason why an arrest record should be retained." *Id.* at 139, 447 A.2d at 281. (citations omitted) Here, it is not disputed and is in fact admitted by the Commonwealth that it cannot prove the defendant guilty beyond a reasonable doubt; therefore, the defendant is innocent. United States Constitution, Article V; Pennsylvania Constitution, Article 1, Section 9. The Commonwealth has presented no compelling evidence why the defendant's record should not be expunged. Therefore, the court concludes that the defendant is entitled to the requested expungement.

For the foregoing reasons the court enters the following order:

## ORDER

And now, February 16, 1995, the Commonwealth's petition for nolle prosequi is denied. The defendant's motion to dismiss with prejudice and expunge criminal record is granted. Defense counsel shall present to the court an appropriate order to effect the expungement.